**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| EDWARD D. WALKER, and | : | CIVIL ACTION |
| PHYLLIS WALKER, h/w | : | |
| Plaintiffs | : | |
| v. | : | |
| | : | |
| NORTH WALES BOROUGH, | : | 05-CV-0425 |
| UPPER GWYNEDD TOWNSHIP, | : | |
| POLICE OFFICER KEITH BLANK, | : | |
| (Individually and as a Police Officer for | : | |
| North Wales Borough), and POLICE OFFICER | : | |
| SCOTT CLARK (Individually and as a | : | |
| Police Officer for Upper Gwynedd Township), and | : | |
| JOHN DOES I THROUGH V, | : | |
| Defendants | : | |

**MEMORANDUM**

Baylson, J.                                                                  **October 19, 2005**

**I.      Introduction**

        Presently before this Court is a Partial Motion to Dismiss, pursuant to F.R. Civ. P.

12(b)(6), filed by Defendants Upper Gwynedd Township ("Defendant Township") and Officer

Scott Clark ("Defendant Clark") (collectively, "Defendants").  For the reasons set forth below,

the Motion to Dismiss will be granted in part and denied in part.

**II.     Background**

        **A.      Procedural Background**

        Plaintiff Edward Walker ("Plaintiff") filed his original civil rights Complaint on January

31, 2005.[1]  Plaintiff filed an Amended Complaint on March 24, 2005.  On May 12, 2005,

_____

        [1]Phyllis Walker, who is Mr. Walker's wife, claims loss of consortium.  (Amended Compl.
at ¶ 48).  Therefore, she is also named as a Plaintiff in this case.  However, unless otherwise
noted, all references in this opinion to "Plaintiff" or "Walker" refer to only Edward Walker.

1

Defendants filed a Partial Motion to Dismiss the Amended Complaint.  Plaintiff filed a Response on May 29, 2005.

> **B.      Allegations in the Complaint**

_____According to the Amended Complaint, on February 2, 2003, Plaintiff was burning trash at his business property in the Borough of North Wales, Pennsylvania.  (Amended Compl. at ¶¶19-20).  Plaintiff states that Defendant Clark, from the Upper Gwynedd Township Police Department, attempted to instruct Mr. Walker with respect to burning trash at his business.  Id. at ¶21.  Walker then "informed Police Officer Scott Clark that the Officer was out of his jurisdiction because [Plaintiff's] property" was not located in Upper Gwynedd Township. Id. at ¶22.  Later in the day, Plaintiff received a call from the North Wales Borough Fire Marshall asking him to douse the fire, at which point, Plaintiff claims that the fire was "merely smoldering." Id. at ¶¶23-24.  Plaintiff alleges that while he was trying to comply with the Marshall's request, Defendant Officer Keith Blank, from the North Wales Police Department, and Defendant Clark "tackled [him] from behind and threw him to the ground causing pain and injury."  Id. at ¶25.  Plaintiff "was then handcuffed, placed into a police vehicle, and transported to the North Wales Borough police station." Id. at ¶29.  Plaintiff states that Defendants Blank and Scott accused him of being intoxicated and forced him to submit to two Breathalyzer tests, both of which were negative.  Id. at ¶¶31-34.  After being held in custody "for a significant period of time," Plaintiff was released with a citation for a summary offense.  Id. at ¶¶35-36.

Plaintiff Edward Walker states that his wife, Plaintiff Phyllis Walker, subsequently filled in the back of the citation and mailed it in with the required payment without Mr. Walker's knowledge or permission.  Id. at ¶38.  Plaintiff Edward Walker alleges that he did not sign the

citation nor intend to plead guilty. Id. at ¶39. Moreover, he contends that his wife was not authorized to plead guilty for him. Id. at ¶40.

Count I of the Amended Complaint asserts that all Defendants[2] violated 42 U.S.C. §1983 by depriving Plaintiff of his rights guaranteed under the First, Fourth, and Fourteenth Amendments. Id. at ¶¶49-54. Count II asserts various state law claims. Id. at ¶¶55-56. Plaintiff Edward Walker seeks relief in the form of compensatory damages, punitive damages, attorneys' fees and costs and other relief as is reasonable and just. Id. at 11. Plaintiff Phyllis Walker seeks damages for loss of consortium. Id.

## III.    Jurisdiction and Legal Standard

### A.    Jurisdiction

This Court has federal question jurisdiction under 28 U.S.C. § 1331, as this action is brought pursuant to 42 U.S.C. § 1983 and Plaintiff alleges violations of his federal constitutional rights. This Court also has supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, to consider Plaintiff's state law claims.

Venue is appropriate in this district, pursuant to 28 U.S.C. § 1391 because the claim arose in this judicial district.

### B.    Legal Standard

When deciding a motion to dismiss pursuant to F.R. Civ. P. 12(b)(6), the court may grant the motion only if, accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, the plaintiff is not entitled to relief. Doug Grant,

---

[2]North Wales Borough and Police Officer Keith Blank, also named as Defendants to this case, filed an answer to the amended complaint.   However, they are not parties to this motion.

Inc. v. Greate Bay Casino Corp., 232 F.3d 173, 183 (3d Cir. 2000).  Accordingly, a federal court

may dismiss a complaint for failure to state a claim only if it is clear that no relief could be

granted under any set of facts that could be proved consistent with the allegations. Doe v. Delie,

257 F.3d 309, 313 (3d Cir. 2001).

## IV.     Contentions

Defendants argue that the Amended Complaint should be partially dismissed with

prejudice pursuant to F.R. Civ. P. 12(b)(6).   With regard to the denial of federal Constitutional

rights pursuant to § 1983 (Count I), they urge the court: 1) to dismiss the First Amendment claim

because Plaintiff neither alleges facts demonstrating that his rights to protected speech were

violated nor identifies any protected speech in which he engaged; 2) to dismiss the entire § 1983

Count against Defendant Upper Gwynedd Township because Plaintiff has not alleged that it has

any custom, policy or practice that authorizes the violation of constitutional rights by its police

officers; and 3) to strike the request for punitive damages under § 1983, because they may not be

awarded against municipalities nor officers acting in their official capacity.

Next, Defendants argue that the court should dismiss certain state claims contained in

Count II.  Specifically, they assert: 1) the state law claims against Defendant Upper Gwynedd

Township and Officer Scott Clark are barred by immunity provisions set forth in the

Pennsylvania Political Subdivision Torts Claim Act, 42 Pa.C.S. § 8541, et seq. ("PSTCA");

2) the malicious prosecution claim is fatally flawed because the proceedings did not end in

Plaintiff's favor; 3) Plaintiff's claim for intentional infliction of emotional distress cannot survive

because he has not alleged sufficiently extreme or outrageous conduct; and 4) finally, Plaintiff

4

has not alleged sufficient facts to support the claim for civil conspiracy.  (Def's Mem. at 5-12).

In response, Plaintiff argues that he has satisfied the liberal notice pleading requirements of the Federal Rules of Civil Procedure.[3]  With respect to his First Amendment claim in Count I, Plaintiff asserts the Amended Complaint "plainly alleges" that Plaintiff challenged Defendant Clark's authority earlier in the day and Clark's later use of excessive force was "motivated by spite."  Thus, Plaintiff argues that the Defendants' actions violated Plaintiff's First Amendment rights and Defendants' motion should be denied.  (Pl's Response at 2-5).

Further, Plaintiff alleges his due process rights were violated when unreasonable force was used by the officers.  Because Defendants offer no reason to dismiss the Fourteenth Amendment due process claim, Plaintiff argues that the Defendants' motion should be denied. (Pl's Response at 6-7).

Plaintiff further argues that he has adequately alleged a municipal liability claim under § 1983 against the Defendant Township.  Plaintiff cites Paragraph 52 to support his argument that he has adequately alleged that the Township has "encouraged, tolerated, ratified and been deliberately indifferent to a series of actionable patterns, practices and customs relating to training, supervision, investigation and discipline."  (Pl's Response at 7, citing Amended Compl. at ¶52).  Plaintiff argues that reasonable discovery will provide him the opportunity to develop the specific facts regarding Upper Gwynedd Township's policies and customs. (Pl's Response at 7-10).  Additionally, while Plaintiff concedes that punitive damages may not be awarded against municipalities nor officers acting in their official capacity under § 1983, Plaintiff urges that here

---

[3]As neither party has submitted affidavits, the court is relying only on the bare allegations contained in the complaint.

he properly seeks punitive damages against Officer Clark in his personal capacity only.

Similarly, Plaintiff argues that he has adequately asserted his supplemental state law claims contained in Count II.   Plaintiff argues that his malicious prosecution claim should not be dismissed because its resolution turns on an issue of disputed material fact: whether Plaintiff Edward Walker plead guilty.  (Pl's Response at 10).  Regarding the remaining state law claims, Plaintiff concedes that Upper Gwynedd Township and Officer Clark (in his official capacity) are shielded from liability under the PSTCA.  However, Plaintiff contends that the state law claims are brought only against the police officer Defendants in their *individual capacities*, and therefore should not be dismissed as against them.  Finally, Plaintiff argues that he has properly alleged the elements of a civil conspiracy claim, including that the "Defendants were acting in concert and conspiracy" as well as alleging that the Defendants were "motivate [sic] by malice."  (Pl's Response at 13).  Therefore, Plaintiff argues that Defendants' Partial Motion to Dismiss should be denied.

## V.     Discussion

At the outset, it is important to note that F.R. Civ. P. 8(a)(2) articulates the liberal notice pleading requirements in the federal courts.  Rule 8 simply requires that a pleading include "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." F.R. Civ. P. 8(a).  "Generally, in federal civil cases, a claimant does not have to set out in detail the facts upon which a claim is based, but must merely provide a statement sufficient to put the opposing party on notice of the claim."  Conley v. Gibson, 355 U.S. 41, 47-48 (1957); Weston v. Pennsylvania, 251 F.3d 420, 428 (3d Cir. 2001).  The same liberal notice pleading requirements

apply to § 1983 civil rights cases as to all other cases filed in federal court.  <u>Leatherman v.</u>

<u>Tarrant County</u>, 507 U.S. 163, 167-68 (1993) (holding that a federal court may not apply a

"heightened pleading standard" in § 1983 civil rights cases filed against municipalities); <u>Abbott</u>

<u>v. Latshaw</u>, 164 F.3d 141, 148 (3d Cir. 1998) (applying the <u>Leatherman</u> standard to a § 1983

claim against a non-municipal defendant).  Specifically, the Third Circuit has held that a civil

rights complaint is adequate if it states the conduct, time, place, and persons responsible for the

alleged violation.  <u>Evancho v. Fisher</u>, 423 F.3d 347, 353 (3d Cir. 2005) (holding plaintiff's §1983

retaliation claim against state attorney general "utterly fail[ed] to meet the liberal notice pleading

standard" where there were no facts alleged connecting the defendant to the alleged wrongdoing).

### A.     Count I - Denial of Federal Constitutional Rights Pursuant to § 1983

### 1.     Defendant Upper Gwynedd Township - § 1983 Municipal Liability

Count I of Plaintiffs' Amended Complaint raises § 1983 Constitutional claims against all

Defendants, including Upper Gwynedd Township, which is a municipality.  As against the

Township, Count I must be dismissed because it fails to plead any facts supporting Plaintiff's

allegation of the existence of an official policy or custom endorsing the officer's alleged

misconduct.

To establish a violation of 42 U.S.C. § 1983 by a municipality, a plaintiff must show that

the alleged misconduct was caused by an official government custom or policy.  <u>Monell v. Dep't</u>

<u>of Soc. Servs.</u>, 436 U.S. 658, 694 (1978).  Municipal custom or policy can be demonstrated

either by reference to express, codified policy or by evidence that a particular practice, although

not authorized by law, is so permanent and well-settled that it constitutes law.  <u>Beck v. City of</u>

7

Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996).  Further, Plaintiff must demonstrate causation, as "a municipality can be liable under § 1983 only where its policies are the moving force behind the constitutional violation." City of Canton v. Harris, 489 U.S. 378, 389 (1989) (internal quotations omitted).

Additionally, for liability to attach under a failure to train theory, Defendants' failure to train its employees must "reflect a 'deliberate' or 'conscious' choice by [the] municipality" such that one could call it a policy or custom.  City of Canton v. Harris, 489 U.S. 378, 388-89 (1989); Grazier v. City of Philadelphia, 328 F.3d 120, 124 (3d Cir. 2003).  This standard will not be satisfied by a mere allegation that a training program represents a policy for which the city is responsible, but rather, the focus must be on whether the program is adequate to the tasks the particular employees must perform.  Harris, 489 U.S. at 389-90.  Moreover, such liability arises "only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants."  Id.

The Plaintiff has not satisfied his burden of alleging facts sufficient to support his claim of municipal liability.  His Amended Complaint lacks any factual allegations 1) referencing the "conduct, time, place, and persons responsible for" any official municipal policy or custom endorsing the police officer Defendants' conduct; or 2) identifying a direct causal link between such a policy and a violation of his rights. Evancho, 423 F.3d at 353.  Instead, Plaintiffs' Amended Complaint summarily asserts the Township has "encouraged, tolerated, ratified and been deliberately indifferent to [certain] patterns, practices and customs," without referencing any specific facts supporting the "who," "what," and "how" of that allegation.   Moreover, as Plaintiff in part proceeds on a failure to train theory, he avers nothing demonstrating how the

8

program is inadequate to the tasks of the particular employees or suggesting the Defendant Township evinced "deliberate indifference" to Plaintiff's rights.

This is not to say the court is not sensitive to Plaintiff's "informational disadvantage." See Alston v. Parker, 363 F.3d 229, 233 (3d Cir. 2004) (noting that the "need for discovery before testing a complaint for factual sufficiency is particularly acute for civil rights Plaintiff, who often face informational disadvantages."). We recognize that as a private litigant, he lacks ready access to Defendants' records without discovery. Id. However, lacking detailed information about police policies does not give Plaintiff license to make bold assertions without *any* factual backing *at all*. In fact, under Rule 11 of the Rules of Civil Procedure, Plaintiff has an obligation only to assert claims for which "the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery." F.R. Civ. P. 11(b)(3). Plaintiff must aver some — even if not yet detailed — facts to support his claim.

Accordingly, this court will grant Defendants' Motion to Dismiss Count I against Defendant Upper Gwynedd Township without prejudice. Plaintiff, however, is given leave to amend his complaint within twenty (20) days to plead specific facts supporting (1) a specific policy or custom, (2) a direct causal link between the policy and Plaintiff's harm, and (3) the Township's 'deliberate indifference' with regard to failing to train, if he can do so within the provisions of Rule 11.

## 2.     Individual Defendant Clark - Personal Liability Under § 1983

To the extent that Plaintiff is suing Defendant Clark in his personal capacity, an

individual can be held liable for § 1983 liability if he personally "participated in violating [another's] rights, or . . . directed others to violate them or . . . had knowledge of and acquiesced in his subordinates' violations." <u>Baker v. Monroe Township</u>, 50 F.3d 1186, 1190-91 (3d Cir. 1995). <u>See also</u> <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir. 1988) (holding that defendant in civil rights action must also have personal involvement in alleged wrongs). The Third Circuit has explained that "allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity." <u>Id.</u>

The Amended Complaint states that Defendant Clark directly participated in "tackl[ing] Mr. Walker from behind and thr[owing] him to the ground" and holding him "in custody for a significant period of time. (Amended Compl. at ¶¶ 25, 35). Additionally, Police Officer Clark "accused Mr. Walker of being drunk and/or intoxicated," and forced him to submit to two Breathalyzer tests. <u>Id.</u> at ¶¶ 31-33. Thus, the Amended Complaint states particular facts indicating that Defendant Clark had personal involvement with Plaintiff's treatment. As a result, he is properly named as an individual defendant in his personal capacity as to the § 1983 claims. Therefore, we must next inquire whether Plaintiff properly states Constitutional claims against Defendant Clark.

### a.    First Amendment Claim

Although rather unclear from the Amended Complaint, Plaintiff's First Amendment claim is apparently premised on retaliatory action by Defendant Clark for Plaintiff's having engaging in protected speech. (Pl's Response at 4-6). This claim will be dismissed without prejudice because it fails to aver sufficient facts to give Defendants fair notice of the basis of this

constitutional assertion.

To sustain a non-employment First Amendment retaliation claim, Plaintiff must allege: (1) that he engaged in protected activity; (2) that the government responded with retaliation; and (3) that the protected activity was the cause of the retaliation. Estate of Smith v. Marasco, 318 F.3d 497, 512 (3d Cir. 2003) (affirming district court's dismissal of First Amendment claim).

Actions taken by police officers in retaliation for citizen challenges to authority have been recognized by several circuit courts of appeal as properly subject to a First Amendment claim under § 1983.   McCurdy v. Montgomery County, 240 F.3d 512, 520 (6th Cir. 2001); Posr v. Court Officer Shield No. 207, 180 F.3d 409, 418-19 (2nd Cir. 1999); Knox v. Southwest Airlines, 124 F.3d 1103, 1107-08 (9th Cir. 1997).  Although the Third Circuit has not squarely confronted this issue, it has specifically cautioned district courts against allowing unsubstantiated First Amendment retaliation claims against police officers to proceed to trial, stating:

> [O]fficers should not by reason of potential civil liability be discouraged from intervening when their services are needed by the not surprising circumstance that a claim has been lodged against a person with whom they have had previous adverse dealings. Society may pay a high price if officers do not take action when they should do so.

Marasco, 318 F.3d at 513.

A review of the Amended Complaint reveals only two allegations that could possibly relate to this constitutional claim.  Plaintiff alleges that "[e]arlier that day [he] had informed Police Officer Scott Clark that the Officer was out of his jurisdiction" and that later that evening, Officers Blank and Clark "tackled Mr. Walker from behind and threw him to the ground causing

pain and injury." (Amended Compl. at ¶¶22, 25).

Viewing all facts as true and in the light most favorable to the non-moving party, Plaintiff simply has alleged insufficient facts in his Amended Complaint to sustain a First Amendment claim.  Paragraph 50 merely contains a boilerplate statement that Plaintiff suffered harm "in violation of . . . the First, Fourth and Fourteenth Amendments."  It contains neither facts nor makes reference to any theory of First Amendment deprivation.[4]  Other portions of the Amended Complaint to which Plaintiff points are similarly wanting for specificity, failing to identify 1) what theory of First Amendment deprivation Plaintiff is pursuing, 2) which speech was allegedly protected, and 3) failing to state any facts connecting the later altercation to the allegedly protected speech.  Morever, while Plaintiff's Memorandum loosely frames his First Amendment claim as based on a theory of retaliation, his memorandum is not a pleading and is outside the scope of this Motion.  See Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1251, 1261 (3d Cir. 1994) (noting that when deciding a motion to dismiss, the court may look only to the facts alleged in the complaint and its attachments).

In sum, the Amended Complaint does not give Defendants fair notice of what Plaintiff's First Amendment claim is and the grounds upon which it rests.  As a result, the First Amendment portion of Count I will be dismissed without prejudice.  However, Plaintiff is given leave to amend his Complaint within twenty (20) days to specify which theory of First Amendment

---

[4]In contrast, Plaintiff specifically references his theories of Fourth and Fourteenth Amendment violations in the same paragraph, alleging the Plaintiff Walker was "deprived of his right to be free from unreasonable and excessive force, unlawful search and seizure, unlawful arrest, malicious prosecution, the right to be secure in his person and property, and due process of law." (Amended Compl. at ¶50).

violation he alleges and to plead the requisite facts.

**b.      Fourteenth Amendment Due Process Claim**

Plaintiff also claims that Defendants' use of unreasonable force violated his right to due process granted by the Fourteenth Amendment.  (Pl's Response at 6-7).  This claim must be dismissed because it is more precisely characterized as a Fourth Amendment excessive force claim.

We first address Defendants' contention that Plaintiff's due process claim must be dismissed because it seeks redress pursuant to the Fifth Amendment. The Fifth Amendment, Defendants urge, applies only to federal government officials, and is thus inapplicable here. (Def's Mem. at 5-6).  In fact, Plaintiff asserts his Due Process claim under the Fourteenth Amendment, the proper vehicle for challenging the *state's* alleged improper imposition of punishment. (Amended Compl. at ¶54).   In short, Defendants are mistaken in their assertion.

Next, we consider Plaintiff's claim that Defendants used unreasonable force under the rubric of the Fourteenth Amendment.  In a series of cases, the Supreme Court articulated the "Most Precise Claim Doctrine," wherein "if a constitutional claim is covered by a specific constitutional provision, it must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." County of Sacramento v. Lewis, 523 U.S. 833, 843 (1998).  Specifically, claims of excessive force should be analyzed under the Fourth Amendment and its reasonableness standard rather than under a substantive due process Fourteenth Amendment approach. Graham v. Connor, 490 U.S. 386, 395 (1989) (vacating and remanding judgment of appellate court).  The Third Circuit has also indicated reluctance to use

13

substantive due process theory when other constitutional claims are extant. See generally,

Khodara Envt'l., Inc. v. Beckman, 237 F.3d 186, 197-98 (3d Cir. 2001).  Accordingly, because it

is more precisely characterized as a Fourth Amendment excessive force claim, Plaintiff's

Fourteenth Amendment Due Process claim must be dismissed.

### 3.    Punitive Damages

Finally, Defendants correctly argue, and Plaintiff concedes, that as against the Township

and Officer Clark (in his official capacity), Plaintiff's claim for punitive damages on Count I

must be dismissed.  (Def's Mem. at 11; Pl's Response at 14).   Punitive damages may not be

awarded against governmental entities or against an officer acting in his or her official capacity.

Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981); Gregory v. Chehi, 843 F.2d 111, 120

(3d Cir. 1988).  Therefore, Plaintiff's claim for punitive damages pursuant to § 1983 against the

Defendant Township or Officer Clark (in his official capacity) will be dismissed.

However, Plaintiff avers he is appropriately seeking punitive damages against Clark in his

*personal* capacity *only*.  As we have already held *supra* that Defendant Clark may be sued

pursuant to § 1983 in his personal capacity, Defendants' Motion to Dismiss Plaintiff's claim for

punitive damages against Officer Clark in his personal capacity is accordingly denied.

### B.    Count II - State Law Claims

### 1.    State Law Claims Against the Township and Officer Clark in his Official Capacity

Count II of Plaintiffs' Amended Complaint raises numerous state law claims, as to which

Plaintiff asserts this court has supplemental jurisdiction.  Because the Pennsylvania Political

Subdivision Tort Claims Act ("PSTCA"), 42 Pa.C.S. § 8541, et seq. affords immunity, Count II

must be dismissed as against Defendants Upper Gwynedd Township and Officer Clark (in his

official capacity).  However, Count II as against Defendant Clark in his personal capacity may

continue.

Defendants argue that most of the state claims are barred by immunity provisions set forth

in the PSTCA. (Def's Mem. at 10).   Under that statute, local agencies, such as townships, and

their employees acting in their official capacities are generally immune from tort liability unless

the alleged misconduct fits into one of a few narrow categories enumerated in the statute.

42 Pa.C.S. §§ 8541-42 . The Act states, in pertinent part:

> Except as otherwise provided in the subchapter, no local agency
> shall be liable for any damages on account of any injury to a person
> or property caused by any act of the local agency or an employee
> thereof or any other person.

Id. at § 8541.  The Act grants broad immunity to municipal defendants based on intentional

conduct, only waiving it with respect to eight narrow categories of "negligent acts," specifically:

> (1) Vehicle liability.--The operation of any motor vehicle in the
> possession or control of the local agency ... (2) Care, custody or
> control of personal property ... (3) Real property ... (4) Trees, traffic
> controls and street lighting ... (5) Utility service facilities ... (6)
> Streets ... (7) Sidewalks ... (8) Care, custody or control of animals.

Id. at § 8542(b).  Moreover, suits against municipal employees acting in their official capacities

are "treated as claims against the municipal entities that employ these individuals."  Hafer v.

Melo, 502 U.S. 21, 25 (1991).

Obviously none of the eight negligence theories apply to Plaintiff's state law claims.  In

15

fact, Plaintiff concedes that both Defendant Township and Defendant Clark (in his official capacity) are shielded from liability under the PSTCA. (Pl's Response at 12). Accordingly, because the PSTCA affords immunity, the Defendants Upper Gwynedd Township and Officer Clark (in his official capacity) cannot be held liable. As against them, the entirety of Count II must be dismissed.[5]

## 2.    Claims Against Defendant Clark in his Personal Capacity

Plaintiff further argues that his state law claims are asserted against Officer Clark in his personal capacity only, for acts which constitute "willful misconduct," and thus immunity does not apply. (Pl's Response at 12).

Individual public employees sued in their personal capacities do not enjoy immunity under Pennsylvania law for willful, intentional torts. 42 Pa.C.S. § 8550. Section 8550 is an exception to the general immunity provided by the PSTCA, when the court finds a defendant's conduct to constitute, among other things, "willful misconduct."[6] Id.; Brown v. Muhlenberg

_____

[5]From the face of Defendants' Partial Motion to Dismiss, it is unclear whether they contend that the PSTCA shields Defendants from liability for the malicious prosecution or intentional infliction of emotional distress ("IIED") claims. First, the header for their section addressing immunity (section F) seemingly limits Defendants' arguments regarding the PSTCA to "assault, battery, false arrest, false imprisonment, abuse of process, invasion of privacy-casting in a false light and civil conspiracy." (Def's Mem. at 10). Second, Defendants separately address their proffered grounds for dismissing the malicious prosecution and IIED claims in sections preceding their discussion of the PSTCA. Moreover, Defendants' memorandum does not delineate between conduct undertaken by the individual Defendants in their official versus personal capacity. Nonetheless, to the extent that this court has just concluded that the PSTCA affords immunity to the Defendant Township and Officer Clark (in his official capacity), we note here to avoid confusion that this applies to *all state law claims* in Count II, including the malicious prosecution and IIED claims.

[6]Section 8550 provides that in an action "for damages on account of an injury caused by the act of the employee in which it is judicially determined that the act of the employee caused

16

Twp., 269 F.3d 205, 214 (3d Cir. 2001).  For alleged police misconduct, the Pennsylvania Supreme Court has held that "willful misconduct" is not synonymous with committing an intentional tort.  Renk v. Pittsburgh, 641 A.2d 289, 294 (Pa. 1994).  Rather, "willful misconduct" means that a police officer committed an intentional tort subjectively knowing that his or her conduct was wrong.  See e.g. In re City of Philadelphia Litigation, 158 F.3d 723, 728 (3d Cir. 1998).

Plaintiff alleges that "Police Officer[] . . . Scott Clark acted wilfully, deliberately, maliciously and/or with reckless disregard for [Plaintiff's] Constitutional and statutory rights." (Amended Compl. at ¶43).  Further, he states Defendants engaged in the alleged misconduct "for the *purpose* of violating Mr. Walker's constitutional rights." Id. at ¶47 (emphasis added). Taken as true, this would constitute knowingly undertaking wrongful conduct by Officer Clark, and thus the allegations in Count II against Officer Clark are sufficient to allege willful misconduct. Defendants' Motion to Dismiss Count II on grounds that the individual Defendant Clark is shielded under the PSTCA in his personal capacity will be denied.  Next we will proceed to address, in turn, each of the state law contentions that are disputed by Defendants.

### a.    Malicious Prosecution Claim

First, Defendants challenge Plaintiff's malicious prosecution claim, contending he fails to establish the element of the tort requiring that the proceeding at issue have terminated in the plaintiff's favor.  For the reason cited by Defendants, this claim must be dismissed.

---

the injury and that such act constituted a crime, actual fraud, actual malice, or willful misconduct," public employees do not enjoy immunity.

In Pennsylvania, a plaintiff alleging common law malicious prosecution must show 1) the defendants initiated a criminal proceeding; 2) *the criminal proceeding ended in the plaintiff's favor*; 3) the proceeding was initiated without probable cause; and 4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice.  <u>Merkle v. Upper Dublin School Dist.</u>, 211 F.3d 782, 791 (3d Cir. 2000) (emphasis added).  <u>See also</u> <u>Corrigan v. Central Tax Bureau of Pa., Inc.</u>, 828 A.2d 502, 505 (Pa. Commw. Ct. 2003).  Criminal proceedings are "terminated in favor of the accused" by: "(a) a discharge by a magistrate at a preliminary hearing; or (b) the refusal of a grand jury to indict; or (c) the formal abandonment of the proceedings by the public prosecutor; or (d) the quashing of an indictment or information; or (e) an acquittal; or (f) a final order in favor of the accused by a trial or appellate court."  <u>Hilfirty v. Shipman</u>, 91 F.3d 573, 579 (3d Cir. 1996) (citing <u>Haefner v. Burkey</u>, 626 A.2d 519, 521 (Pa. 1993)).  A guilty plea, even if part of a compromise with the prosecutor, is fatal to a malicious prosecution claim. <u>Alianell v. Hoffman</u>, 176 A. 207, 207-08 (Pa. 1935) (malicious prosecution claim could not be maintained by defendant who settled criminal charge against him by paying fine and returning goods, even though prosecutor withdrew charges pursuant to the compromise).

Here, none of the six methods for terminating a proceeding in favor of the accused apply. While it may in fact be in dispute whether Mr. Walker gave his wife permission to or *intended* to plead guilty, what is not in dispute is that the state court proceeding terminated in the *government's* favor.  In fact, Plaintiff Edward Walker admits in his Amended Complaint that a guilty plea was entered against him for the summary offense. (Amended Compl. at ¶¶38-40). Simply stated, Plaintiff has failed to show that the criminal proceeding ended in his favor, a required element of the tort.  Accordingly, the court will dismiss the malicious prosecution claim.

18

<u>b.      **Intentional Infliction of Emotional Distress Claim**</u>

Defendants also challenge Plaintiff's intentional infliction of emotional distress ("IIED")

claim, arguing the conduct alleged does not rise to the level required to state a claim under

Pennsylvania law.  As there remains disputed issues of material fact regarding the outrageousness

and extremity of the alleged conduct, we will not dismiss the claim.

In order to state a claim for IIED in Pennsylvania, the plaintiff must establish four

elements: (1) the conduct of the defendant was intentional or reckless; (2) the conduct was

extreme and outrageous; (3) the conduct caused emotional distress; and (4) the distress was

severe. <u>See</u> <u>Chuy v. Phila. Eagles Football Club</u>, 595 F.2d 1265, 1273 (3d Cir. 1979).  For a

plaintiff to recover for IIED, "the conduct must be so outrageous in character, and so extreme in

degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and

utterly intolerable in a civilized society." <u>Cox v. Keystone Carbon Co.</u>, 861 F.2d 390, 395 (3d

Cir. 1998) (quoting <u>Buczek v. First Nat'l Bank of Mifflintown</u>, 531 A.2d 1122, 1125 (Pa. Super.

Ct. 1987)).

Defendants contend that, as a matter of law, the officer's conduct did not rise to the level

of extremity and outrageousness required.  Plaintiff alleges in his Amended Complaint that

Officer Clark tackled him and threw him to the ground in front of his neighbors. (Amended

Compl. at ¶¶25-26).  Further, Plaintiff asserts he was handcuffed, taken into custody for a

"significant period of time," accused of being drunk, and forced to take two Breathalyzer

examinations, all without probable cause and all causing severe physical, emotional and

psychological harm. <u>Id.</u> at ¶¶29-35, 46.   Whether this conduct rises to the level of extremity and

19

outrageousness required under the law is a question of material fact.  Given that we can only

dismiss a claim if no set of facts consistent with the allegations would give rise to relief, <u>Doe</u>,

257 F.3d at 313, it is not appropriate to dismiss the intentional infliction of emotional distress

claim at the 12(b)(6) stage.

<b>c.     Civil Conspiracy Claim</b>

Finally, Defendants seek to dismiss the conspiracy claim, arguing Plaintiff fails to

sufficiently allege the required element of two or more persons combining or agreeing to achieve

unlawful ends.  The court disagrees with Defendants' contentions and finds Plaintiff adequately

pleads his civil conspiracy claim.

The tort of civil conspiracy under Pennsylvania law requires a plaintiff to show that two

or more persons combined or agreed with intent to do an unlawful act or to do an otherwise

lawful act by unlawful means.  <u>Scully v. US WATS, Inc.</u>, 238 F.3d 497, 516 (3d Cir. 2001);

<u>Thompson Coal Co. v. Pike Coal Co.</u>, 412 A.2d 466, 472 (Pa. 1979).  Thus, civil conspiracy

requires an agreement and either a criminal act or intentional tort.  <u>See</u> <u>Boyanowski v. Capital</u>

<u>Area Intermediate Unit</u>, 215 F.3d 396, 406 (3d Cir. 2000).   Conspiracy may be proved by

circumstantial evidence; that is, "by acts and circumstances sufficient to warrant an inference that

the unlawful combination had been in point of fact formed for the purpose charged."  <u>Scully</u>, 238

F.3d at 516.  Nonetheless, the "evidence must be full, clear and satisfactory. . . . Mere suspicion

or the possibility of guilty connection is not sufficient, nor proof of acts which are equally

consistent with innocence."  <u>Id.</u>

The Amended Complaint specifically avers that Defendants were "acting in concert and

20

conspiracy," and with the "purpose of violating Mr. Walker's constitutional rights by subjecting him to unreasonable force and an unlawful arrest, search and malicious prosecution." (Amended Compl. at ¶¶18, 47).   Additionally, while "mere suspicion" is not alone sufficient, we recognize that the very nature of a conspiracy claim almost always requires an inference of agreement.   The Amended Complaint alleges that both officers acted together in throwing Walker to the ground, forcing him to take two Breathalyser tests, and holding him in custody.  Id. at ¶¶25, 32-33, 35. Such sustained action in concert, if proven, could certainly be "sufficient to warrant an inference that the unlawful combination had been in point of fact formed for the purpose charged."  Scully, 238 F.3d at 516.  We are not willing to foreclose Plaintiff's opportunity to prove an agreement to achieve unlawful ends.  Therefore, Defendants Motion to Dismiss the civil conspiracy claim is denied.

**VI.     Conclusion**

Defendants' Partial Motion to Dismiss will accordingly be granted in part and denied in part.  An appropriate Order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| EDWARD D. WALKER, and | : | CIVIL ACTION |
| PHYLLIS WALKER, h/w | : | |
| Plaintiffs | : | |
| v. | : | |
| | : | |
| NORTH WALES BOROUGH, | : | 05-CV-0425 |
| UPPER GWYNEDD TOWNSHIP, | : | |
| POLICE OFFICER KEITH BLANK, | : | |
| (Individually and as a Police Officer for | : | |
| North Wales Borough), and POLICE OFFICER | : | |
| SCOTT CLARK (Individually and as a | : | |
| Police Officer for Upper Gwynedd Township), and | : | |
| JOHN DOES I THROUGH V, | : | |
| Defendants | : | |

## ORDER

AND NOW, this        day of October, 2005, based on the foregoing memorandum and upon consideration of the pleadings and briefs, it is hereby ORDERED that Defendants' Partial Motion to Dismiss (Doc. No. 16) be disposed as follows:

1.    Count I against Defendant Upper Gwynedd Township is hereby dismissed, without prejudice and with leave to amend within twenty (20) days;

2.    The First Amendment claim in Count I is hereby dismissed, without prejudice and with leave to amend within twenty (20) days;

3.    The Fourteenth Amendment claim in Count I is hereby dismissed with prejudice;

4.    The assertion of punitive damages in Count I is hereby dismissed with prejudice as against Upper Gwynedd Township and Officer Scott Clark (in his official capacity);

5.    Count II against Upper Gwynedd Township and Officer Scott Clark (in his official capacity) is hereby dismissed with prejudice;

6.    The malicious prosecution claim stated in Count II is hereby dismissed with prejudice; and

7.    As to all the other claims, the motion to dismiss is denied.

BY THE COURT:

s\Michael M. Baylson

_____

**MICHAEL M. BAYLSON, U.S.D.J.**

O:\CIVIL\05-0425 Walker v North Wales Borough\05-425 Walker v North Wales Borough et al MTD.wpd